Elizabeth **LEVENDOS**, Appellant,

v.

**STERN ENTERTAINMENT, INC. and Stern Entertainment System, Inc.**

No. 88–3079.

United States Court of Appeals,
Third Circuit.

Argued June 22, 1988.

Decided Nov. 9, 1988.

Ken Gormley (argued), Mansmann, Cindrich and Titus, Pittsburgh, Pa., for appellant.

Ronald L. Hicks, Jr. (argued), Dennis Unkovic, Joseph A. Vater, Jr., Meyer, Unkovic and Scott, Pittsburgh, Pa., for appellee.

Before GIBBONS, Chief Judge, and HIGGINBOTHAM, Circuit Judge, and ROTH, District Judge.[*]

---

[*] Honorable Jane R. Roth, United States District Judge for the District of Delaware, sitting by designation.

OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Elizabeth Levendos appeals the summary judgment entered by the district court in favor of Appellees Stern Entertainment, Inc. and Stern Entertainment Systems, Inc., in an action alleging discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e–2000h–6 (1982).

We hold that appellant raised a genuine issue of material fact regarding whether she was constructively discharged from her job. Accordingly, we will vacate the district court's order granting summary judgment in favor of Appellees, and remand the case to the district court for further proceedings.

I.

Beginning in 1979, Elizabeth Levendos ("Levendos") worked as a waitress at Les Nuages, a Pittsburgh restaurant owned by Stern Entertainment, Inc. and Stern Entertainment Systems, Inc. ("Stern"). Stern promoted Levendos to the positions of maitre'd and pastry chef in or about September, 1981. Joint Appendix ("App.") at 9–10.

According to an affidavit filed by Levendos, she "was the only female in a management position," and that "[a]lthough males who had previously held th[e] position of maitre'd were included in management meetings, [she] was not [so] included...." App. at 46 (affidavit of Elizabeth Levendos). She further stated that the general manager of the restaurant "boasted that [Levendos] would not be there long," *id.* at 47, that "management ... told other employees that [she] did not fit the 'mold' for maitre'd because [she] was a woman," *id.*, that the chef "was asked ... by [the owner] to find a male to replace [her]," *id.*, that "management ... falsely accusing [her] of

stealing, drinking and fraternizing with employees," *id.*, and that "[o]ne evening [she] discovered wine bottles placed in [her] locker ... to make it appear as if [she] were stealing." *Id.*

An affidavit filed by Robert Roth, one of Levendos's co-workers, stated that Levendos "had an excellent reputation at the restaurant[, that c]ustomers frequently came in and asked for her specifically," App. at 51 (affidavit of Robert Roth), and that "she was written up in the Pittsburgh Press for her excellent work." *Id.* at 52. He stated, moreover, his belief that the owner "liked the image of a male staff," *id.*, that the chef "acknowledged that [there] was a plan to get rid of her, and replace her with a male friend of [the chef]," *id.*, and that the owner refused to meet with her. *Id.*

Both the affidavits included the affiants' view that Stern management disliked women in general and viewed them as inferior. App. at 47, 54. Moreover, in the complaint that Levendos filed with the Equal Employment Opportunity Commission ("EEOC"), she alleged that she was not allowed to order supplies although a male manager was able to order them, *id.* at 13, and that she was replaced by a male friend of the chef. *Id.*

On April 22, 1982, Levendos resigned her position by letter to the owner, explaining that her action was precipitated because he suspected her of stealing. App. at 44.[1] She filed the instant action on December 21, 1984. *Id.* at 6. Upon defendants' motion for summary judgment, the district court found that even if the facts Levendos alleged were true, they did not establish, as a matter of law, that she was constructively discharged from her position. The court therefore granted summary judgment in favor of Stern. *Levendos v. Stern Entertainment Inc., et al.*, Nos. 84–3051 and 84–3053, slip op. at 2 (W.D.Pa. Sept. 9,

---

1. Levendos thereafter filed a charge of discrimination with the EEOC on September 21, 1982. Appendix at 13. The EEOC, in turn, issued a determination that "there is reasonable cause to believe that the allegation regarding [constructive discharge] is true." *Id.* at 16. Attempts at voluntary reconciliation were unsuccessful, and on September 26, 1984, the EEOC issued a right to sue letter. *Id.* at 17.

1987), *reprinted in* App. at 61.[2]

## II.

We have often stated that in our review of a summary judgment, we must employ the same test that the district court applies. *See Jackson v. University of Pittsburgh,* 826 F.2d 230, 232 (3d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 732, 98 L.Ed. 2d 680 (1988); *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.) (in banc), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Pursuant to the Federal Rules of Civil Procedure, a district court may grant a summary judgment motion only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As we were reminded in *Jackson,* " '[m]aterial' facts are those 'that might affect the outcome of the suit under the governing law ...' ", 826 F.2d at 232 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)) and

> [i]nferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The nonmovant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt.

*Jackson,* 826 F.2d at 232 (quoting *Goodman,* 534 F.2d at 573) (footnote omitted).

In this case, as in *Jackson* and *Chipollini,* we examine the legal sufficiency of facts that underlie an employment discrimination action and that are presented to us in the procedural posture of a summary judgment motion. The "governing law", *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, in a Title VII case is well-established and consists of shifting burdens of proof. In the three-part analysis, "the plaintiff has the [initial] burden of proving by the preponderance of the evidence a prima facie case of discrimination." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)).[3] This Court reiterated the elements of a Title VII plaintiff's *prima facie* case under the *Burdine/McDonnell Douglas* holdings in *Chippolini:*

> In the absence of direct evidence a plaintiff may establish a *prima facie* case of discrimination by proving by a preponderance of the evidence that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was dismissed despite being qualified; and (4) he ultimately was replaced by a person [in a non-protected class so as] to permit an inference of ... discrimination.

814 F.2d at 897.

In *Chippolini,* however, we further held that in a motion for summary judgment, "[t]he burden to demonstrate the absence of material fact issues remains with the moving party regardless of which party would have the burden of persuasion at trial." 814 F.2d at 896.[4] Thus, although

---

**2.** Levendos's daughter, Katerina Levendos, had also filed a complaint against Stern. The district court consolidated the cases for disposition, Appendix at 57–58, and entered summary judgment in favor of Stern as to Elizabeth Levendos, but denied Stern's motion for summary judgment as to Katerina Levendos. *Id.* at 59–60.

**3.** "Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden,

the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

**4.** We went on to state that "to meet its burden on summary judgment, the defendant employer must show that the plaintiff will be unable to introduce either direct evidence of a purpose to discriminate, or indirect evidence of that purpose by showing that the proffered reason [for the employer's rejection of the employee] is

Levendos has the ultimate burden of persuasion at trial, Stern, as the moving party on summary judgment, has the burden on this motion of demonstrating that Levendos did not establish the presence of a genuine issue of material fact regarding her *prima facie* case. In this case, therefore, the precise question that requires resolution is this: did Stern meet its burden of demonstrating that Levendos failed to raise genuine issues of material fact regarding her *prima facie* case of sex discrimination?[5]

Levendos's affidavit and the other record evidence leave no doubt that she has established the first, second and fourth elements of her *prima facie* case. Levendos is female and thus indisputably belongs to a protected class. It is also undisputed that she was replaced by a male. That she was qualified for her position as maitre'd and pastry chef does not appear to be contested, and is, moreover, amply evidenced by the fact of her promotion, and the favorable press and customer comments mentioned in the affidavits.

The third prong of Levendos's *prima facie* case is the one possible material fact that could be disputed: whether she was *dismissed* despite being qualified. Levendos does not deny that she submitted a letter of resignation, but contends nevertheless that she was discharged from her position. Relying on the doctrine of "constructive discharge," she argues that her affidavit describes several incidents that create a genuine issue of material fact with respect to whether she was in effect dismissed from her job.

This Court, as well as most of the other courts of appeals, have decided that "acts of discrimination in violation of Title VII can make working conditions so intolerable that a reasonable employee would be forced to resign," *Goss v. Exxon Office Systems, Co.*, 747 F.2d 885, 887 (3d Cir. 1984), and therefore entitle the employee to damages for wrongful termination in addition to damages for the pretermination discrimination. *See id.* at 889. While these courts generally agree that "constructive discharge" is a heavily fact-driven determination, at least two, and possibly three, different legal standards have emerged to aid in determining whether constructive discharge has occurred. Some courts have adopted a test based on an inquiry into the motive of the employer, holding, for example, that "the employer's actions must have been taken with the intention of forcing the employee to quit." *Johnson v. Bunny Bread, Co.*, 646 F.2d 1250, 1256 (8th Cir. 1981); *see also Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir.1985) (employer must deliberately make employee's working conditions so intolerable that resignation is forced); *Coe v. Yellow Freight System, Inc.*, 646 F.2d 444, 454 (10th Cir.1981) (must be deliberate effort to make things difficult for employee). Other courts, such as ours, have adopted a reasonable person test, which is focussed on the impact of an employer's actions, whether deliberate or not, upon a 'reasonable' employee. *See, e.g., Goss*, 747 F.2d at 888 ("The court need merely find that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign."); *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir.1987) ("plaintiff need not show that the employer subjectively intended to force the employee to resign."); *Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir.1986) ("focus is upon the 'reasonable state of mind of the putative discriminatee' "); *Williams v. Caterpillar Tractor, Co.*, 770 F.2d 47, 50 (6th Cir.1985) ("Reasonableness ... is measured ... from the perspective of a reasonable person in the position that [the employee] was in at the time of [his or] her discharge."); *Welch v. University of Texas and Its Marine Science Institute*, 659 F.2d

---

subject to factual dispute." *Chippolini,* 814 F.2d at 899.

**5.** *Chippolini* teaches that a defendant's motion for summary judgment does not increase the Title VII plaintiff's burden under the *Burdine* and *McDonnell Douglas* tests. The motion does not provide a springboard for the court to intercede upon the province of the jury and evaluate the relative merits of the evidence that has been presented.

531, 534 (5th Cir.1981) (same); *Clark v. Marsh*, 665 F.2d 1168 (D.C.Cir.1981) (same). Yet another court appears to have bifurcated the standard into the subjective, or deliberate, component and the objective, or reasonable person, one. *See Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986).[6]

In *Goss*, this Court upheld a district court's finding of constructive discharge where a female sales representative was verbally abused about her decision to become pregnant, her employer assigned her lucrative sales territory to a male representative despite the plaintiff's successful performance, thus effectively cutting her pay, and her attempts to pursue remedies in-house resulted in the ultimatum that she either accept the new assignment or resign. 747 F.2d at 888. We held these factual findings, based on credibility determinations, to be legally sufficient to support a claim of constructive discharge, and we therefore affirmed the district court's judgment in the plaintiff's favor. *Id.* at 889.

The district court here held that the case did could not proceed to trial because even if the factual allegations in support of Levendos's position were true, they were legally insufficient to raise the issue of constructive discharge. It thus granted summary judgment for defendants. We disagree with the district court's assessment both of the record evidence and of the relationship of this evidence to the governing legal standard. The record certainly

"contains more than 'a scrap of evidentiary material,'" *Jackson*, 826 F.2d at 234 (citations omitted), from which a fact-finder could infer that conditions at the restaurant were so intolerable that a maitre'd of reasonable sensitivity would be forced to resign.[7] Indeed, we find that the evidence presented by Levendos is even consistent with the stringent legal test that this Court rejected in *Goss*, namely, the standard based on evidence of deliberate actions on the part of the employer to force the employee to resign, as well as with the objective, 'reasonable person' standard adopted by this circuit in *Goss*, 747 F.2d at 888.

We emphasize that the fact-finder must assess the veracity and weight of Levendos's various factual allegations. While we can imagine a maitre'd who might not object to exclusion from management meetings, denial of authority to order supplies, false accusations of stealing from and drinking on the job, and who might not be disturbed by rumors and remarks that she would be replaced by a male, her employer's refusal to talk with her, and to find wine bottles in her locker, we find that these events are clearly not trivial.[8] It is of course plausible that a jury could decide ultimately that a reasonable person would tolerate some or even all of these occurrences without being forced to quit. It is equally plausible, however, that a jury would come to the opposite conclusion.

In support of the district court's holding that Levendos's assertions were legally in-

---

**6.** One commentator has suggested that the court of appeals for the fifth circuit has gone even further and held that constructive discharge can be established under either test. Note, *Choosing a Standard for Constructive Discharge in Title VII Litigation*, 71 Cornell L.Rev. 587, 609–10 (1986).

**7.** We note that Levendos's affidavit alone would be sufficient to raise this issue of material fact. As we stated in *Jackson*, there is "no rule of law that provides that a discrimination plaintiff may not testify in his or her own behalf, or that such testimony, standing alone, can never make out a case of discrimination that will survive a motion for summary judgment." 826 F.2d at 236.

**8.** Without analyzing in detail the portions of the record selected by the dissent to illustrate its

view that Levendos presented a paucity of evidence to support her theory of constructive discharge, dissent typescript, *infra*, at 2, we find that some of those selected passages would not be hearsay under Fed.R.Evid. 801(d)(1) because they are admissions by a party-opponent. Other portions are simply assertions made by the declarants as to matters of which they may or may not have personal knowledge under Fed.R.Evid. 602—but in any case, would not fall under the definition of hearsay under Fed.R.Evid. 801(c).

By not even acknowledging the existence of admissible evidence, much less balancing that evidence against the relatively little that might be inadmissible, the dissent mischaracterizes the record as a whole. It is, of course, to the total record that we must look when assessing whether summary judgment was properly granted.

sufficient to constitute constructive discharge, Stern argues that the facts alleged by Levendos do not rise to the level of "aggravating circumstances" that would justify a legal finding of constructive discharge. We did not explicitly discuss in *Goss* the requirement adopted by some other courts that under the reasonable person test, a "plaintiff alleging a constructive discharge must show some 'aggravating factors,' such as a continuous pattern of discriminatory treatment." *Watson*, 823 F.2d at 361.[9] While courts employing this term have been vague about its place in the constructive discharge analysis, their use of the term implies that a minimum threshold of discrimination will be required before a court can, as a matter of law, find constructive discharge. Under this view, a single incident of discrimination ordinarily would not rise to a constructive discharge because courts would, as a result, encourage an employee to "set himself [or herself] up as the judge of every grievance," *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir.1977), and potentially to walk out of situations that may not be discriminatory *in toto*. This requirement presumes "that Title VII policies are best served when the parties, if possible, attack discrimination within the context of their existing employment relationships." *Watson*, 823 F.2d at 361 (citing *Thorne v. City of El Segundo*, 802 F.2d 1131, 1134 (9th Cir.1986)). Some courts utilizing the reasonable person standard have therefore required the plaintiff to demonstrate more than a single discriminatory incident in the workplace. *See, e.g., Watson*, 823 F.2d at 361 ("plaintiff alleging a constructive discharge must show some 'aggravating factors,' such as a continuous pattern of

discriminatory treatment"); *Held*, 684 F.2d at 432 (various incidents "formed a continuous course of discriminatory conduct"). Other courts have implied that this requirement applies also to *quality*, as well as quantity, of the allegedly discriminatory act or acts. *See, e.g., Pittman*, 644 F.2d at 1077 ("we find no aggravating factors and we conclude that the failure to equalize pay did not ipso facto constitute constructive discharge").

For several reasons, we do not agree with Stern's contention regarding the lack of "aggravating circumstances" in this case. First, we cannot, by any stretch of the imagination, characterize this case as a 'single incident' case. Levendos has alleged the occurrence of several incidents during her short tenure as maitre'd that, cumulatively, could meet the "aggravating circumstances" test. Indeed, appellees do not argue seriously a lack in the number of incidents. Rather, they contend that each of these incidents is too trivial to constitute an aggravating circumstance. This is an argument we flatly reject. Levendos's allegations contain both the quality and quantity of evidence sufficient to allow the question of constructive discharge to go to a jury.

Furthermore, we cannot state as a broad proposition of law that a single non-trivial incident of discrimination can never be egregious enough to compel a reasonable person to resign. An employment discrimination plaintiff may simply face a more difficult burden of proof in establishing the employer's liability, when relying on a single discriminatory incident as a basis for arguing the occurrence of constructive discharge.[10]

---

9. This "aggravating circumstances" requirement had been articulated at the time of the *Goss* decision by at least three other courts of appeals. *See Nolan v. Cleland*, 686 F.2d 806, 813 (9th Cir.1982); *Pittman v. Hattiesburg Municipal Separate School District*, 644 F.2d 1071, 1077 (5th Cir.1981); *Clark*, 665 F.2d at 1174. *Cf. Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir.1982) (constructive discharge resulted when "plaintiff was subjected to various forms of treatment indicating sex-based opprobrium ... [which] formed a continuous course of discriminatory conduct.").

10. One commentator, discussing cases by the court of appeals for the fifth circuit, has suggested that the "aggravating circumstances" requirement is not a *per se* requirement in the determination whether the employer is liable, but that it is such a requirement in determining *extent* of liability. Note, *supra* note 6, at 608, (contrasting *Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61 (5th Cir.1980) and *Pittman* with *Welch* and *Meyer v. Brown & Root Const. Co.*, 661 F.2d 369 (5th Cir.1981).

We conclude therefore that Stern, as the moving party on summary judgment, failed to meet its burden of demonstrating the absence of various "material facts", that is, those that would "affect the outcome of the suit," *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510, crucial to the specific legal determination of whether a reasonable person in Levendos's position would have been compelled to resign. *Cf. Calhoun*, 798 F.2d at 563 (summary judgment improper where plaintiff's single affidavit alleges a "behavior pattern" that "compare[s] favorably enough with fact patterns in successful age discrimination cases."); *Buckley v. Hospital Corp. of America, Inc.*, 758 F.2d 1525, 1530–31 (11th Cir.1985) (demotion from supervisor to staff nurse presented jury question as to constructive discharge in age discrimination case); *see also Nolan*, 686 F.2d at 813–14 (plaintiff's "career was punctuated with numerous ... instances of discrimination ... that may have made [plaintiff's] position intolerable and raises a genuine issue of material fact that a reasonable person would have felt compelled to resign under such circumstances."); *Downey v. Southern Natural Gas Co.*, 649 F.2d 302, 305 (5th Cir.1981) (supervisor's remark that plaintiff "might be discharged ... [is] sufficient to create a contested issue of material fact regarding constructive discharge.") What Stern has done instead is to highlight the existence of genuine issues as to those facts, and resolution of these issues of fact is a task reserved to the fact-finder at trial. We cannot, therefore, uphold the district court's finding that, even after giving Levendos the benefit of the doubt, *Jackson*, 826 F.2d at 232 (citations omitted), no reasonable person in Levendos's position would resign under these circumstances.[11]

Thus we hold that Levendos, as the Title VII plaintiff, presented sufficient evidence to raise a genuine issue of material fact regarding whether she was constructively discharged from her position, and that Stern, as the moving party on summary judgment, failed to meet its burden of demonstrating its absence. We find, accordingly, that the district court erred in granting summary judgment for Stern.

### III.

For the foregoing reasons, we will vacate the district court's order and remand the case for further proceedings consistent with this opinion.

ROTH, District Judge, dissenting.

Defendant moved for summary judgment in this action on April 8, 1987, on the basis that plaintiff Elizabeth Levendos had freely resigned from her employment, giving notice by letter dated April 22, 1982. At this point in the litigation, discovery had been completed and both parties had filed their Pre-Trial Narrative Statement. Plaintiff opposed the motion for summary judgment on the ground that she had been constructively discharged. At trial, plaintiff would have the burden of proving constructive discharge. That burden would be to establish that her "employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Goss v. Exxon Office Systems, Co.*, 747 F.2d 885, 888 (3d Cir.1984). The substantive law, *i.e.*, constructive discharge in this case, will identify which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). Where, as here, the nonmoving party will bear the burden of proof at trial on the issue of constructive discharge, Federal Rule of Civil Procedure, Rule 56(e) requires that she designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1985). This evidence need not be in a form that would be admissible at trial. *Id.* Nevertheless, I dissent from the majority opinion in this case in part because I conclude that plaintiff has designated facts

---

11. We do not review here the relation of the evidence to the second and third steps in the *Burdine/McDonnell–Douglas* analysis, *see supra* note 3, since the district court did not proceed that far in its analysis. We do note, however, that the evidence adduced by Levendos and discussed here is also highly relevant to those two further steps.

that are presented in a form that would clearly be inadmissible as evidence at trial and in part because I conclude that plaintiff has not demonstrated that defendant "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." In other words, I believe that the ultimate inadmissibility of plaintiff's designated facts should be a consideration here. In addition, I find plaintiff's conclusory statements to be inconclusive.

On the question of the inadmissibility of plaintiff's designated facts, evidence of defendant's discriminatory animus is presented by statements such as:

> Many of the managers and employees of Les Nuages Restaurant and Heaven Discotheque did not prefer women and dismissed many other women upon false and trumped charges.

Affidavit of Elizabeth Levendos, para. 4.

> The management of Les Nuages and Heaven Discotheque viewed females as inferior, and told other employees that I did not fit the "mold" for maitre'd [sic] because I was a woman. Chef David DeVos was asked by Richard Stern to find a male to replace me, and he ultimately hired Robert Ashurst, a male friend who had worked with him previously.

Id. at para. 8.

> Elizabeth was the only female in the management level. Rick Stern liked the image of a male staff. He didn't feel that Elizabeth fit in the way he wanted. I remember at the end Elizabeth could never get an appointment to sit down and talk to him. I think he had clearly decided to get rid of her, and Chef DeVos acknowledged that it was a plan to get rid of her, and replace her with a male friend of DeVos.

Affidavit of Robert Roth, para. 7.

When the hearsay within hearsay and the speculation on the mental processes of others is removed from the above, very little is left of the discriminatory element. Plaintiff in essence is left with the fact that she was replaced by a man and that previous male maitre d's had attended management meetings (who and when undesignated) while plaintiff was not included in any decision-making meeting (no further information given). Furthermore, in view of the fact that it is the alleged perpetrators of the discrimination against plaintiff who are the missing links in reducing double hearsay to admissible testimony of a statement by a party opponent, it does not appear that the above-quoted statements could be presented in admissible form. Nor, in view of the fact that discovery had been completed, can plaintiff argue that the motion for summary judgment curtailed her efforts to uncover additional evidence to support her burden of designating material facts.

In regard to the question of whether plaintiff demonstrated "conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign," I am concerned by the very short duration of plaintiff's difficulties, a week or two at most. This fact is apparent from her letter of resignation. Moreover, one cannot determine from plaintiff's Pre–Trial Narrative Statement and Affidavit whether there was just one incident in which wine bottles were placed in plaintiff's locker and she was accused of dishonesty and drinking on the job, or whether there were other incidents and accusations against her made by management. The inadmissibility of most of plaintiff's evidence on discrimination, the weakness of what's admissible, together with her failure to be more specific in her designation of facts regarding harassment all lead me to conclude that she had presented an inadequate scintilla of evidence in opposition to defendant's motion. If a situation, as vaguely described as plaintiff's is, is deemed to constitute "constructive discharge," I fear that the "reasonable person" test of Goss will be transformed into the test of the subjective reaction of the employee.

> [T]he law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges and disappointments; these inhere in the nature of

the work. An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress. The employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred. They cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting.

*Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), *cert. denied* 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718.

I do not find that plaintiff has met her burden of demonstrating conditions so intolerable that a reasonable person would resign.

For the above stated reasons, I respectfully dissent.