Vanderick **DESPER**

v.

**MONTGOMERY COUNTY, et al.**

Civ. No. 88–4212.

United States District Court, E.D. Pennsylvania.

Jan. 5, 1990.

Judith Brown Chomsky, Philadelphia, Pa., for plaintiff.

Stephen G. Heckman, Wilson Drayer Morrow Furber & Lecky, Norristown, Pa., for Montgomery County.

Alan Lee Levengood, Reynier Crocker Allebach & Reber, P.C., Pottstown, Pa., for Thomas E. Waters, Jr.

David L. Narkiewicz, Lansdale, Pa., for Michael D. Marino.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff filed suit alleging that he was constructively discharged from his position as a member of the Montgomery County Narcotics Enforcement Team ("NET") in violation of his rights under the United States and Pennsylvania Constitutions and the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* Defendants Montgomery County, Thomas E. Waters, and Michael D. Marino have filed motions for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff's claims arise out of the following allegations. Plaintiff was initially employed as a police officer with the Cheltenham police force from September of 1983 until September of 1984. While he served on the Cheltenham force, he also worked part-time with the Montgomery NET. In 1984, however, he began to work with the NET full time, and continued to work for Montgomery County until he resigned in 1987.

As an undercover narcotics officer, plaintiff had to assume different identities, and, at times, he was required to take drugs so that his identity as a police officer would not be revealed to those who sold narcotics to him as part of his undercover operations. During the four years plaintiff worked as an undercover officer, his use of drugs, and, in particular, his use of cocaine, increased. Plaintiff attributes his increased usage to stressful conditions at home and at work. By April of 1987, plaintiff was freebasing up to an eighth of an ounce of cocaine per day. At that time, he entered an in-patient drug rehabilitation program at Eugenia Hospital and remained in the hospital for about a month. Plaintiff also claims that he entered into the hospital because of stress and depression.

Plaintiff claims that upon his return his co-workers "shunned" him. He states that Lieutenant Woodward, a man with whom he did not have a close relationship, passed him by at the station and merely said hello to him. Plaintiff states that Lieutenant Woodward did not ask him how he felt, nor did he inquire into his absence. Plaintiff also states that, unlike the way other employees who had been absent from work because of illnesses were treated, no one made contact with him at the hospital and no one presented him with a card or warm greeting upon his return.

In addition, plaintiff alleges that, on one occasion, when he went out on a raid with members of the narcotics team, he was not informed of the circumstances of the raid. Plaintiff admits, however, that he did not ask any of his co-workers what was happening, despite the fact that he waited for four hours prior to the raid as a member of a stake out. Plaintiff alleges that his ignorance about the circumstances surrounding the raid increased the risk to his life and caused him emotional distress. Finally, plaintiff claims that he was given a lighter workload upon his return from the hospital. It is these instances that, plaintiff claims, caused him to resign.

Prior to his resignation, plaintiff had missed several days of work. The Chief of Detectives, Oscar Vance, called the plaintiff at home to find what the problem was, and plaintiff told him he would resign the following Monday. Plaintiff did so on June 8, 1987. On the next day, his wife met with Oscar Vance. Plaintiff alleges that his wife told Mr. Vance that her husband was not thinking clearly when he resigned and asked Mr. Vance to withdraw the resignation. Mr. Vance refused to do so.

Plaintiff next alleges that he resumed his use of drugs and once again entered into a rehabilitation program. After he returned from the program, he requested defendant Thomas Waters, then District Attorney of Montgomery county, to reinstate him. His request was denied. In 1988, plaintiff made another request for employment as a detective with Montgomery county, and Michael Marino, who had succeeded Thomas Waters as District Attorney, refused to rehire the plaintiff.

Based on the above factual allegations, plaintiff claims that the defendants' employment practices violated the equal protection and due process clauses of the fourteenth amendment and the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*[1]

---

**1.** Plaintiff, in his complaint, appears to be alleging that the defendants discriminated against him because of his drug use. Defendants initially assumed that plaintiff's claims were based on his drug use. Plaintiff, however, now contends in his response to defendants' motions for summary judgment, that his claim of discrimination is not based on defendants' awareness of his drugs use, but rather, on his hospitalization for stress and depression. Because plaintiff appears to be asserting claims based both on his drug use and his emotional state, I will address

## I. Equal Protection

In Count I plaintiff alleges that the defendants violated the equal protection clause of the fourteenth amendment by denying him employment for reasons that are not rationally related to a legitimate governmental interest. Specifically, plaintiff contends that the defendants manifested a supportive concern for undercover narcotics officers hospitalized for physical illnesses that was not exhibited to those hospitalized for drug use or mental stress. Plaintiff states that he was not "shunned" or given lighter duties when he returned from a previous work absence caused by back problems. By contrast, plaintiff claims that when he returned from his hospitalization for drug rehabilitation/stress, he was relieved of his undercover duties.

■ Defendants contend that, to the extent that plaintiff's claim rests on his hospitalization for drug use, it is foreclosed by the Third Circuit's decision in *Copeland v. Philadelphia Police Dept.*, 840 F.2d 1139 (3d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989). In *Copeland,* the plaintiff, a police officer who was dismissed for drug use, claimed that he was disciplined in a more severe manner than officers who had used alcohol. The city conceded that it did discipline officers who used drugs in a more severe manner than those who used alcohol, but it claimed that a rational distinction existed between the two categories of officers: One group violated the law merely by possessing drugs while the other group engaged in an activity that is not *per se* unlawful. The court accepted the city's distinction as one rationally related to a legitimate government interest.

Plaintiff argues that *Copeland* is distinguishable because plaintiff was not using drugs at the time the alleged constructive discharge took place. Plaintiff's distinction, however, as applied to the facts involved in this matter, is without merit. It is not irrational for a police department to treat an undercover narcotics officer who has been hospitalized for drug use in a different manner than an officer who has been hospitalized for a physical ailment. A police department has a legitimate interest in making sure that an undercover narcotics officer who has been hospitalized for drug abuse is fully capable of returning to an environment which led to the abuse in the first place.

■ To the extent that plaintiff's claim is related to his stress and depression, a similar rationale applies. Arguably, a police department may not be able to justify an across-the-board policy of reducing the work load of officers who have been hospitalized for stress and depression. However, in a situation involving an undercover narcotics officer who becomes depressed because of his work and marital problems, and, as a result of that depression, spends a month in a hospital seeking treatment, a department has a legitimate interest in assuring that the officer is capable of fully resuming the duties which created the stress leading to hospitalization.

## II. Rehabilitation Act

In order to establish a claim under the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* plaintiff must establish that (1) he is a handicapped individual within the meaning of the Act; (2) he is otherwise qualified for the position sought; (3) he was excluded from that position by reason of his handicap; and (4) the program or activity in question receives federal financial assistance. *Strathie v. Department of Transportation,* 716 F.2d 227, 229 (3d Cir.1983).

Defendants concede for the purpose of their motions that they receive federal funding, and, with respect to plaintiff's drug use, they concede that drug addiction qualifies as a handicap. However, to the extent that plaintiff claims depression and stress as his handicap, defendants assert that mental stress is not a handicap within the meaning of the Act, arguing that it is a transitory illness. Defendants also contend that their refusal to rehire plaintiff did not violate the Act, because plaintiff was not otherwise qualified. Further, defendants assert that even if mental stress

both claims in resolving the defendants' mo-          tions.

constitutes a handicap, plaintiff was not constructively discharged from his position.

A person is handicapped within the meaning of the Rehabilitation Act if he or she has a physical or mental impairment which substantially limits one or more major life activities. 29 U.S.C. § 706(7)(B). The Act specifically protects individuals suffering from mental impairments, and thus the issue is whether plaintiff's stress and depression constitute impairments which substantially limited plaintiff's major life activities. Under the regulations promulgated by the Department of Health and Human Services, major life activities are defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 CFR § 84.3(j)(2)(ii).

Defendants, relying on *Stevens v. Stubbs*, 576 F.Supp. 1409 (N.D.Ga.1983), argue that plaintiff's stress and depression constitute transitory illnesses because plaintiff was not hospitalized for stress and depression, but for drug addiction. Plaintiff, on the other hand, contends that he was hospitalized for both his drug addiction and for stress and depression, and thus argues that his mental illness constitutes a handicap. Given that the motion before me is one for summary judgment, and defendants have not offered evidence to show that plaintiff was hospitalized solely for drug addiction, I will assume for purposes of this motion that plaintiff's mental illness is a handicap within the meaning of the Act. *See School Board of Nassau County v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 1127, 94 L.Ed.2d 307 (1987) (hospitalization more than sufficient to establish the impairment of a substantial life activity).

Plaintiff must next establish that he was otherwise qualified to return to work as an undercover narcotics officer. In order to show that he is otherwise qualified, plaintiff must establish that (1) he can meet all of the requirements of his position as an undercover officer in spite of his handicap, or (2) if he is unable to meet all the requirements, he could do so with reasonable accommodations on the part of the department:

A handicapped individual who cannot meet all of the program's requirements is not otherwise qualified if there is a factual basis in the record reasonably demonstrating that accommodating that individual would require either a modification of the essential nature of the program, or impose an undue burden on the recipient of federal funds.

*Strathie v. Department of Transportation*, 716 F.2d 227, 231 (3d Cir.1983).

■ Plaintiff asserts that he is otherwise qualified because his past performance sufficiently illustrates that he was qualified to perform the work required. He also notes that Chief Vance had been satisfied with his work. Defendants claim that, to the extent that plaintiff alleges drug addiction as his handicap, he is not otherwise qualified to serve as an undercover narcotics officer. They contend that under *Copeland*, 840 F.2d 1139 (3d Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989), a police department is not required to modify its program in order to accommodate a drug user.

In *Copeland*, the court held that "accommodating a drug user within the ranks of a police department would constitute a 'substantial modification' of the essential functions of the police department and would cast doubt upon the integrity of the police force." 840 F.2d at 1149. The court went on to note that a rehabilitation program could not alter the fact that an officer violates the laws he or she is sworn to uphold. Accordingly, to the extent that plaintiff relies on his drug use as his handicap, I find that he is not otherwise qualified, and thus his claim is foreclosed under the Rehabilitation Act.

■ Moreover, to the extent that plaintiff claims his handicap is stress and depression, I also conclude that plaintiff was not otherwise qualified to perform duties as an undercover narcotics officer. If, as plaintiff alleges, he was hospitalized for at least a month because of his stress and depression, and that stress and depression led to his drug addiction, it would indeed be

a substantial modification of an essential function to require a police department to return plaintiff to his undercover duties. Indeed, plaintiff's own doctor suggested that it would be in plaintiff's best interest to avoid a position as an undercover narcotics officer. This is not to suggest that every police officer who is impaired by stress and depression is not otherwise qualified. Indeed, one may suppose that it is not uncommon for a police officer to suffer from stress and depression during his or her career, and occasionally an officer may be hospitalized because of such an illness. Upon returning to work, an officer may reasonably expect to pursue the full panoply of duties. I do conclude, however, that plaintiff, an undercover narcotics officer, whose stress and depression were so severe that they led him to the use of drugs, is not otherwise qualified under the Act.[2]

## II. Due Process

In Count II of his complaint, plaintiff asserts that the defendants violated his due process rights under the fourteenth amendment when the defendants constructively discharged him.

■ In order to establish a claim under the fourteenth amendment, plaintiff must show that he has a cognizable property interest in his employment sufficient to trigger procedural due process requirements. And plaintiff must further establish that the defendants deprived him of that property interest without procedural due process. *Copeland v. Philadelphia Police Department*, 840 F.2d 1139 (3d Cir. 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989). The defendants appear to concede that plaintiff had a protected property interest in his employment as a narcotics detective, but they strongly dispute that he was deprived of due process. They contend that plaintiff's resignation forecloses his due process claim. Defendants concede, however, as they must, that if plaintiff's resignation was so involuntary that it amounted to a constructive discharge, then plaintiff would have been deprived of his rights of due process.

The elements required to establish a constructive discharge claim under the due process clause are not entirely clear. Some courts have required an individual asserting a constructive discharge claim to establish that the defendant forced a discharge in order to avoid a pretermination hearing, *see, e.g., Fowler v. Carrollton Public Library*, 799 F.2d 976 (5th Cir.), *reh. denied*, 803 F.2d 717 (1986); others have required that the plaintiff show that the employer either obtained the plaintiff's resignation through misrepresentations or deceit or forced the resignation by duress or coercion, *see Stone v. University of Maryland Medical System*, 855 F.2d 167 (4th Cir. 1988); and still others appear to adopt the Title VII standard, *see, e.g., Greenberg v. Kmetko*, 840 F.2d 467, 475 (7th Cir.1987). However, assuming arguendo the applicability of the least demanding standard—Title VII's so-called "intolerable circumstances" standard—plaintiff has not established that he was constructively discharged.

In order to establish a claim of constructive discharge under Title VII, plaintiff must show that the defendants made his working conditions so intolerable that a reasonable employee would be forced to resign. *Levendos v. Stern Entertainment, Inc.*, 860 F.2d 1227 (3d Cir.1988). In the case at bar, plaintiff does not deny that he resigned from his position as a narcotics officer. After missing several days of work and after Chief Vance called to discover why plaintiff was not at work, plaintiff told Vance that he would resign the following Monday. Plaintiff did so, but he contends he resigned because his fellow employees shunned him and he was not given information regarding a raid. Plaintiff further alleges that he was given lighter duties and was not given new assignments.

Even if it is true that his co-workers did not welcome him with open arms, and that they failed to give him information on one occasion, such actions would not force a reasonable person to resign. Given that plaintiff had been absent from work for

---

**2.** Because I find that plaintiff was not otherwise qualified, I need not determine whether plain-tiff was constructively discharged under the Rehabilitation Act.

over a month, and that his absence was because of stress and/or drug use, it was not unreasonable—and, a fortiori, it was not intolerable—for Vance to lighten plaintiff's workload in order to facilitate his re-acclimation to his position as a narcotics undercover officer. This is not a case, for example, where an employer withdrew an employee's workload solely because of the employee's sex, *see Goss v. Exxon Office Systems, Co.*, 747 F.2d 885 (3d Cir.1984), or where an employer excluded an employee from all management decisions, threatened to replace the employee with a member of the opposite sex, and then falsely accused the employee of theft. *See Levendos*, 860 F.2d at 1231. In this case, even if all of plaintiff's allegations are true, there is no evidence establishing circumstances under which a reasonable person would resign and thus the defendants' actions did not amount to constructive discharge.

Accordingly, defendants' motions for summary judgment will be granted in the accompanying order.

### ORDER

For the reasons stated in the accompanying memorandum, it is hereby ORDERED and DIRECTED that defendants' motions for summary judgment are GRANTED.