NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2707
_____

SHEILA SEENEY,
                              Appellant
v.

ELWYN, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 08-cv-05032)
District Judge: Honorable Eduardo C. Robreno
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 25, 2011

Before:  SCIRICA, SMITH and VANASKIE, Circuit Judges

(Filed: February 1, 2011)
_____

OPINION OF THE COURT
_____

PER CURIAM.

        Appellant Sheila Seeney appeals the District Court's order granting summary

judgment in favor of her former employer, Elwyn, Inc.  For the foregoing reasons, we

will affirm.

Seeney, an African-American, was a long-time employee of Elwyn, Inc., a residential treatment facility for people with mental and physical disabilities. Seeney was employed by Elwyn from December, 1980 until February, 2006, and worked the third shift, serving Elwyn's neediest, round-the-clock care clients. Sometime prior to October 18, 2005, a new supervisor, Luceni Kamara, a male of African descent, was appointed her supervisor. When Seeney reported to work on October 25, she observed that one of the residents had severely soiled himself, and had been left unattended by the previous shift. Seeney asked Kamara for his help in placing the resident in the shower. Kamara demanded that Seeney first clean the resident up in the wash basin. Seeney declined because the resident had a history of biting. Following a disagreement about how to properly clean the resident, Kamara sent Seeney home without completing her shift. She later was suspended for three days without pay for refusing to accept a reasonable job assignment. Seeney served the suspension and returned to work.

Thereafter, Seeney reported Kamara to Elwyn management when he was sleeping on duty. Kamara was suspended for this infraction. In December, 2005, Seeney complained to management that Kamara had falsely accused her of improperly leaving her shift. Neither Seeney nor Kamara was disciplined for this event. In January, 2006, Seeney complained that Kamara intentionally bumped into her in the hallway, and she claimed that this was in retaliation for her reporting that he was sleeping on the job. She complained that Kamara's behavior was aggressive, erratic and abusive. In February, 2006, Seeney submitted a letter complaining that Kamara had yelled at her for removing

2

a log book from his desk. On the morning of February 22, 2006, after one more incident with Kamara over cleaning a refrigerator, Seeney resigned.

After Seeney filed a complaint with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission, and the EEOC issued a right to sue letter, Seeney filed suit against Elwyn in the United States District Court for the Eastern District of Pennsylvania. She alleged racial discrimination, disparate treatment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 et seq. See Amended Complaint, at ¶¶ 7, 11. The District Court appointed counsel to assist Seeney. After taking Seeney's deposition, Elwyn moved for summary judgment, and Seeney submitted a written response in opposition.

In an order and judgment entered on April 26, 2010, the District Court granted summary judgment to Elwyn. Noting that Seeney had relied on a theory of constructive discharge to show that she was forced to resign, the court concluded that Seeney could not point to any evidence that her resignation was on account of racial discrimination by Kamara or Elwyn. There was no direct evidence that Kamara's alleged harassment was based on her race, and her many letters to Elwyn complaining about Kamara made no reference to racial discrimination, disparate treatment based on her race, or retaliation after making race-based complaints. Moreover, Seeney was never threatened with discharge, she was not encouraged to resign, she was not demoted, her pay was not reduced, she was not involuntarily transferred to a less desirable position, her job responsibilities were not altered, and she was not subjected to unsatisfactory job

3

evaluations. With respect to the October 18, 2005 incident, the court observed that she did not follow up on her suspension with Elwyn officials or her union. Accordingly, a reasonable jury could not conclude that the conditions faced by Seeney during the five-month period in question were so intolerable that a reasonable employee facing the same conditions would leave the job. Therefore, she did not establish a prima facie case of race discrimination.

With respect to her allegation that Kamara retaliated against her by harassing her after she reported that he was sleeping on the job, the District Court determined that Seeney's evidence was insufficient to show that Elwyn took an adverse action after, or contemporaneous with, her complaint. Although Seeney was suspended in October, 2005, she had never complained about Kamara prior to the suspension, and the suspension thus could not form the basis of a retaliation claim. There was no other evidence in the record of any other action that arguably could be regarded as adverse. Kamara's alleged retaliatory behavior, while rude and unprofessional, did not rise to the level of racially motivated retaliation. Therefore, there was no prima facie showing of retaliation. In the margin, the District Court noted that the claim was time-barred in any event because Seeney filed her EEOC charge on December 1, 2006, more than 300 days after the 2005 suspension, see 42 U.S.C. § 2000e-5(e)(1).

Seeney appeals. A motions panel of the Court previously denied her motion to restrict electronic access to certain items filed in the court of appeals.

4

We will affirm.  We have jurisdiction under 28 U.S.C. § 1291.  Seeney contends on appeal that her case presents a triable issue with respect to whether she had no choice but to resign given the intolerable conditions at work, and that Elwyn management, which is predominantly Caucasian, "fell flat at supervising L. Kamara."  See Reply Brief, at 2.  She contends in her opening Informal Brief on appeal that the District Court failed to consider Vice President Scott Campbell's "Action Sheet," which foretold her termination and thus forced her to resign.  See Informal Brief, at 11.

Our review of the District Court's grant of summary judgment is plenary and we must affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. Pro. 56(c)(2).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A genuine issue of material fact is one that could change the outcome of the litigation.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

To prevail on a claim of discrimination, a plaintiff must first establish a prima facie case.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  A prima facie case is established where the plaintiff shows that (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253

5

(1981). Only if the plaintiff establishes a prima facie case does the burden of production shift to the defendant to set forth a legitimate, non-discriminatory reason for its action. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993).

The District Court determined that Seeney could not show a genuine issue for trial with respect to whether she suffered an adverse employment action that gave rise to an inference of unlawful discrimination. Burdine, 450 U.S. at 253. We have carefully reviewed the record and the items Seeney attached to her briefs on appeal and conclude that there was an insufficient evidentiary basis on which a reasonable jury could find in her favor on this issue. Anderson, 477 U.S. at 249-50. It is undisputed that Seeney was not terminated by Elwyn. Therefore, to show that her resignation was an adverse employment action taken by Elwyn, she had to show that she was forced to resign or constructively discharged under circumstances that give rise to an inference of racial discrimination. To establish a constructive discharge claim, a plaintiff must show that the employer knowingly permitted conditions of discrimination in the workplace "so intolerable that a reasonable employee would be forced to resign." Levendos v. Stern Entertainment, Inc., 860 F.2d 1227, 1230 (3d Cir. 1988) (internal quotations removed). The analysis focuses on what a reasonable person would do if placed in the position the employee was in when she resigned. See id.

Courts consider a number of factors in determining whether an employee was forced to resign, including whether (1) she was threatened with discharge; (2) she was encouraged to resign; (3) she was demoted or suffered a reduction in pay or benefits; (4)

6

she was involuntarily transferred to a less desirable position; (5) her job responsibilities were altered; and (6) she began receiving unsatisfactory job evaluations.  See Clowes v. Allegheny Valley Hospital, 991 F.2d 1159, 1161 (3d Cir. 1993).  See also Colwell v. Rite Aid Corp., 602 F.3d 495, 502-03 (3d Cir. 2010).

We agree with the District Court that Seeney came forward with no evidence that she was forced to resign because of racial discrimination.  There was no direct evidence that Kamara's alleged harassment of her was based on her race.  She did not identify any employee of Elwyn who was treated more favorably, and she offered no evidence that any incidents involving Kamara or any other employee were motivated by racial bias.  See Iadimarco v. Runyon, 190 F.3d 151, 161 (3d Cir. 1999) (to establish a prima facie case plaintiff must "present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII").  Seeney's contemporaneous letters to Elwyn management complaining about Kamara made no reference to racial discrimination, disparate treatment based on her race, or retaliation after making race-based complaints, and this seriously undermines her claim of race discrimination.  Seeney's contention in her brief on appeal that Elwyn failed to adequately supervise Kamara, and that this failure was motivated by Elwyn management's racial bias, finds no support whatever in the record. Fed. R. Civ. Pro. 56(e)(2) (non-moving party must come forward with affidavits or other evidence specific facts showing that there is a genuine issue for trial).

Moreover, as determined by the District Court, it was undisputed that Seeney was not encouraged to resign, she was not demoted, her hourly pay was not reduced, she was not involuntarily transferred to a less desirable position, her job responsibilities were not altered, and she did not begin to receive unfavorable job evaluations. With respect to her contention on appeal that she was threatened with termination, we note that the October, 2005 suspension was, as she states, approved by Vice President Scott Campbell. The suspension letter was written by Unit Director Maryanne Booth, and it stated that, "should a situation arise in the future warranting additional disciplinary action, we will proceed to the next progressive step, up to and including termination of your employment at Elwyn, Inc." Supp. App. 84. However, a rational trier of fact would not find a threat of termination in this letter because the statement about proceeding to the next step is conditioned on an event that might not ever happen – a need for further discipline.

Furthermore, although a three-day suspension without pay may be considered an adverse employment action, see, e.g., Russell v. Board of Trustees of the University of Illinois, 243 F.3d 336, 341 (7th Cir. 2001) (suspension for five days without pay is adverse employment action), the question with respect to summary judgment in Seeney's case is not whether the suspension was adverse but whether a reasonable person, when faced with the suspension, would have felt forced to resign. Seeney has never alleged that the suspension by itself forced her to resign. She asserts on appeal that Kamara sent her home for a second time on February 22, 2006 after they fought about how to properly clean the refrigerator, and she believed she would eventually be terminated by Elwyn for

8

this incident. Rather than waiting to learn the outcome of her latest conflict with Kamara, she resigned. Thus, Seeney subjectively determined that she was likely to be disciplined again and possibly terminated, but the law of constructive discharge "does not permit an employee's subjective perceptions to govern [the] claim." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1083 (3d Cir. 1992) (quoting Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985)).

Attached to Seeney's Reply Brief on appeal is a decision of the state Unemployment Compensation Board of Review reversing a decision of the Referee and determining that Seeney "had cause of a necessitous and compelling nature for quitting" under section 402(b) of the Pennsylvania Unemployment Compensation Law. See Exhibit to Appellant's Reply Brief. Although Seeney did not raise a contention on appeal that this decision has a preclusive effect in her case, we note for the sake of completeness that a state unemployment agency's ruling that an employee had just cause to resign has no preclusive effect in subsequent Title VII proceedings. Roth v. Koppers Indus., 993 F.2d 1058, 1062 (3d Cir. 1993).

Title VII bars retaliation against an employee who exercises her right to complain about discrimination. 42 U.S.C. § 2000e-3(a). It does so by prohibiting an employer from doing anything that is likely to deter a victim of discrimination from complaining to the EEOC, the courts, or her employer. See Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997). To establish a prima facie case of retaliation under Title VII, an employee must show that (1) she engaged in a protected employment activity, (2) her employer

9

took an adverse employment action after or contemporaneous with the protected activity, and (3) a causal link exists between the adverse action and the protected activity. <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 430 (3d Cir. 2001). Seeney offered no evidence to show that she suffered an adverse employment action after or contemporaneous with an action she took that was protected by Title VII. Although Seeney submitted complaints about Kamara to management, those complaints were devoid of any mention of racial discrimination or discrimination of any kind, and thus are not protected by Title VII. In addition, as explained by the District Court, Seeney's suspension without pay in October, 2005 is the only adverse employment action she suffered, and it preceded any of her complaints about Kamara. It thus could not form the basis of a prima facie retaliation claim.[1]

For the foregoing reasons, we will affirm the judgment of the District Court awarding summary judgment to Elwyn, Inc.

---

[1] We have not overlooked Seeney's complaints throughout her briefs on appeal that appointed counsel failed to investigate her allegations, and took no depositions of potentially helpful witnesses in the proceedings below. Evidently, she did not bring her concerns to the attention of the District Court. Nevertheless, we note that counsel was present at her deposition, and he also submitted a response in opposition to Elwyn's motion for summary judgment, arguing that there was a triable constructive discharge issue. Because Seeney has yet to come forward with any witnesses to support her claim of racial discrimination, and her deposition testimony did not support a case for racial discrimination, we fail to see how additional activity on appointed counsel's part would have made a difference in her case.