**Andrew L. PITTMAN, Jr.,**
**Plaintiff-Appellant,**

v.

**HATTIESBURG MUNICIPAL SEPARATE SCHOOL DISTRICT,**
**Defendant-Appellee.**

No. 79–2662.

United States Court of Appeals,
Fifth Circuit.
Unit A

May 13, 1981.

---

Elliott Andalman, Hattiesburg, Miss., for plaintiff-appellant.

Moran M. Pope, Jr., Hattiesburg, Miss., for defendant-appellee.

Before WISDOM, RUBIN and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

Plaintiff Pittman appeals from the judgment below for the defendant, the Hattiesburg Municipal Separate School District, in this Title VII employment discrimination suit involving unequal pay and constructive discharge claims. This Court reverses the judgment of the district court and remands for a determination of damages and attorneys' fees.

Pittman, a black, began working for the School District in June 1971 as a fulltime assistant to Seaton, a white and the head of the Printing Department. Seaton resigned in August 1972 when his salary was $6900. Pittman was then hired as Printer on a trial basis at $5000. Pittman had no assistant at the outset nor at any time during his employment as Printer. Pittman testified that the District Superintendent, Dr. Spinks, told Pittman that he would be raised to Seaton's salary "if he did OK," but Pittman never did receive what Seaton had been paid. He received raises in his annual salary on July 1, 1973, to $5500 and on August 7, 1973, to $6000. In August 1973 Pittman was formally promoted to Seaton's former position, which signified the end of his trial period. On July 1, 1974, his salary was raised to $6600. During this two year period, Pittman periodically requested that his salary be increased to $6900, the amount that Seaton had been paid in 1972. On August 14, 1974, after once more requesting equal treatment with Seaton, Pittman resigned. He was then still being paid $300 less than Seaton had received in 1972 and was working without an assistant. To replace Pittman, Seaton was then rehired as Printer in September 1974 at $7800,[1] $1200 more than Pittman had been paid one month before.

Pittman sued the School District pursuant to 42 U.S.C.A. § 2000e–2(a)(1) for alleged racial discrimination in employment. He sought compensatory backpay damages with reasonable attorneys' fees and costs. The case was tried to a U.S. magistrate,

---

1. Seaton resigned in June 1977 when he was receiving an annual salary of approximately $9000, and Brown, a white, was hired as Printer at $9200.

whose findings of fact and conclusions of law were adopted by the district court. On this basis judgment was entered in favor of the School District.

██ To establish a prima facie case of racial discrimination with respect to compensation, the plaintiff must show that he was paid less than a member of a different race was paid for work requiring substantially the same responsibility. *See Calcote v. Texas Educational Foundation*, 578 F.2d 95 (5th Cir. 1978); *Quarles v. Phillip Morris, Inc.*, 279 F.Supp. 505 (E.D.Va.1968). *See also Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 44 L.Ed.2d 1 (1974) (Equal Pay Act) *and Ammons v. Zia Co.*, 448 F.2d 117, 119–20 (10th Cir. 1971) (elements of unequal pay claim same under Title VII and Equal Pay Act). The usual unequal pay case involves two employees, one black and one white, employed at the same time and doing substantially the same work. In this case, the two employees were employed at different times in the same position. The analysis is nonetheless the same for this type of case.

██ Dr. Spinks testified that he hired Printers at a salary determined by the job market place and by an informal assessment of his staff, without written guidelines. There was no written seniority system, merit system, job classification, or job description for the position. Without needing to condemn unwritten, informal, vague, and subjective salary determination procedures as highly susceptible to the abuses of racial discrimination, *see Grove v. General Motors Corp.*, 457 F.2d 348, 359 (5th Cir. 1972), it is enough to note that, if the difference in labor value of a white printer and a black printer stems from the market place putting a different value on race, Title VII is violated. 42 U.S.C.A. § 2000e–2(a)(1). It does not matter that the school officials got along with Pittman, nor does it matter how much they held their beliefs in good faith that they were not engaging in racial discrimination simply by paying the going rate for a black. The differential in pay is violative of Title VII absent some reason other than an impermissible one such as race.

██ The School District argues that the difference in pay was not based on race, but instead on different job responsibilities and quality of performance between Pittman and Seaton. By properly showing a significant difference in job responsibilities, a defendant can negate one of the crucial elements in plaintiff's prima facie case—different pay for the same or substantially the same responsibility. A sufficient showing of a significant difference in the quality of job performance would constitute a legitimate nondiscriminatory reason for the employer's action in rebuttal of the prima facie case. It would then be incumbent upon plaintiff to show the articulated reason of different performance quality is pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

With respect to the School District's assertion that Seaton had greater responsibilities than Pittman before Seaton left in 1972, the School District claims that the trial court found, on the basis of conflicting evidence, six duties assigned to Seaton but not to Pittman. Defendant further argues that there were in fact written job requirements so that there was a basis for finding the duties and responsibilities were substantially different.

The magistrate's opinion adopted by the district court, however, found that there were no written job descriptions. Nor did the magistrate make a finding as to those six additional duties. The magistrate merely stated that the School District's witnesses alleged these differences but that it was unnecessary to attempt fully to resolve the factual dispute of whether Pittman took over some or all of these duties. Rather than deal with this difficult fact issue, the magistrate avoided it by finding that defendant articulated a legitimate, nondiscriminatory reason in rebuttal of any prima facie case. Although the magistrate merely assumed without deciding that plaintiff made out a prima facie case, this Court must deal with the prima facie case issue of different responsibility before reaching the

rebuttal issue of different performance quality. This is for the reason that a failure to make out a prima facie case obviates the need to reach any other issue.

■ The defendant's evidence concerning different job responsibilities consists of the testimony of Spinks, Dr. Caston (Spinks' Administrative Assistant and Pittman's immediate supervisor), and Barksdale (defendant's Purchasing Agent), and Caston's notes prepared for the EEOC investigation and for trial. Pittman's assertion that there was no change in duties is supported by the corroborating testimony of another Printing Department employee, Peggy King, and by the EEOC investigator in this case. To find Title VII liability here, however, it is not necessary for this Court to resolve the conflicting evidence. Assuming without deciding that Seaton had greater responsibilities in 1972 than Pittman had when he began work as Printer, the record reflects that by August 1973, Seaton had completed his probationary period. Without the assistant that the district had provided Seaton, Pittman handled the work satisfactorily. More conclusively, there is no evidence that, upon Seaton's return in 1974, he was assigned more work or greater responsibilities. He began to do the same work Pittman had been doing at an annual salary that was $1200 more.[2] Since there was no difference in responsibilities between Pittman and Seaton on Seaton's return to defendant's employ, Pittman established the crucial element for the prima facie case

inference.[3] This Court concludes that, since it is shown that Pittman received unequal pay for substantially identical work, the prima facie case of racial discrimination in compensation was made out. *See East v. Romine, Inc.,* 518 F.2d 332, 338–40 (5th Cir. 1975); *Jefferies v. Harris County Community Action Ass'n,* 615 F.2d 1025, 1031 (5th Cir. 1980). The next question, then, is whether defendant rebutted the prima facie case by articulating a legitimate nondiscriminatory reason for the employment action.

The magistrate stated that, while Pittman was as proficient as Seaton in the operation of the printing machinery, Pittman's performance of other duties as head of the Printing Department, mostly administrative, "perhaps did not reach the same level as that of Seaton." The basis for the magistrate's finding of rebuttal was the testimony of Spinks and Caston.

■ To rebut the plaintiff's prima facie case, a defendant must articulate some legitimate, nondiscriminatory reason for the employment action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Supreme Court has recently clarified the nature of the burden that shifts to the defendant. *Texas Department of Community Affairs v. Burdine,* —— U.S. ——, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To rebut the presumption of discrimination established by the prima facie case, the defendant must come

2. The EEOC investigator testified that Caston told the investigator that, when Seaton returned in September 1974, his duties were the same as Pittman's had been in August 1974. Spinks also testified at trial that Seaton's duties on returning were the same as Pittman's, and only later were his responsibilities increased. Spinks testified that Seaton's return salary of $7800 was the "market place" salary. As the earlier discussion makes clear, however, paying the going "open market" rate can still violate Title VII if the market places different values on black and white labor.

3. Of course, whether there was a change in responsibilities when Pittman took over Seaton's job in 1972 is relevant to the determination of damages. If there was a reduction in responsibilities for the position of Printer, part·

of the difference in Pittman's salary and Seaton's final 1972 salary may be so accounted for by the defendant. On the other hand, the conflicting evidence may be resolved by a finding that there was no change in duties in 1972. If so, then the amount of damages will of course be larger. While it is, therefore, not necessary for this Court to resolve the conflicting evidence on responsibility to find Title VII liability, a determination of damages will require a resolution of this factual dispute. On remand, the district court will, of course, consider the fact that no evidence was introduced that suggested Seaton performed greater services than Pittman in 1974 when Seaton was rehired and paid $7800. In fact, there was testimony introduced at trial that the responsibility remained the same.

forward with evidence that the employment action was taken for a legitimate, nondiscriminatory reason. *Id.* 101 S.Ct. at 1094. The sufficiency of the admissible evidence in satisfying this burden of production is whether the evidence raises a genuine issue of fact such that the trier of fact could conclude that the employment decision had not been motivated by a discriminatory animus. *Id.* 101 S.Ct. at 1094, 1095. The evidence provided must be legally sufficient to justify a judgment for the defendant. *Id.* 101 S.Ct. at 1094. The defendant's explanation of its legitimate reasons must be clear and reasonably specific. *Id.* 101 S.Ct. at 1096. We evaluate the defendant's evidence to determine whether it meets with these standards.

Spinks and Caston testified that in their opinion Seaton possessed a substantially greater degree of administrative and managerial skill and ability while operating the Printing Department than did Pittman. These mere assertions alone would not rebut the prima facie case. In support for this reason, Caston and Barksdale testified that they each had to spend at least one to two extra hours per week working with Pittman. However, this testimony must be evaluated in the light of the other facts. Pittman had to operate the Printing Department himself; when Seaton was Printer, he had Pittman to assist him on a full time basis from June 1971. Moreover, Pittman did begin work as a probationer. It was to be expected that, at least at the start of his work, some additional supervision would be needed. There was also uncontroverted testimony that the amount of printing work increased. Any additional time involved for Caston and Barksdale might just as likely have been due to the increased amount of work in the Printing Department. This testimony does, however, create the necessary issue of fact sufficient to rebut plaintiff's prima facie case. Plaintiff must therefore prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were a

pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.

The district court found, on the basis of the magistrate's recommendations, that Pittman failed to show defendant's reason to be pretextual. This finding is clearly erroneous. Pittman was clearly doing acceptable work for the School District since he received every available across-the-board raise—in fact he received raises above the across-the-board level—and because Spinks tried to persuade Pittman to stay on after Pittman notified the School District of his intention to seek employment elsewhere. Pittman testified that Caston told him, in response to a further inquiry about not receiving Seaton's final salary, that "[b]eing Black, where do you think you'll get a job as a printer in this state?" Although Caston disputes having made the statement, Pittman's testimony is corroborated by that of Peggy King, a white School District employee, who testified that Pittman related to her Caston's statement shortly after his meeting with Caston. The clear implication of all this is that, because Pittman did acceptable work as head of the Printing Department, the defendant was very much interested in keeping him on since as a black he could be paid much less than a white for doing acceptable work. While Pittman's administrative and managerial skills could very well not be as great as Seaton's, race was still one of the bases on which the defendant paid Pittman less money than it paid Seaton. This is sufficient to establish employer liability under section 2000e–2(a)(1). *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976) (to show pretext, need only show race was a "but for" cause, not sole basis, for employment action); *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 1257 (5th Cir. 1977) (pretext shown if race was factor in employment decision). Therefore, Pittman proved a racially discriminatory pay differential and is entitled to recover.[4]

---

4. Any managerial and administrative skill differential is of course relevant to the amount of recoverable damages. Defendant may show that a portion of the discrepancy between what

Pittman received and what Seaton would have received had he stayed on is due to administrative and managerial skill differences.

In addition to unequal pay, Pittman claims that he was constructively discharged. Constructive discharge occurs when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation. *Young v. Southwestern Savings & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975). To find constructive discharge, the court determines whether or not a reasonable person in the employee's position and circumstances would have felt compelled to resign. *Bourque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 65 (5th Cir. 1980). The employee thus does not have to prove it was the employer's purpose to force the employee to resign. *Id.* at 65.

Unlawful discrimination in the form of unequal pay is relevant in any determination of whether a constructive discharge has occurred. *Id.* at 66. Although *Bourque* recognizes the relevancy of unequal pay as a factor supporting a finding of constructive discharge, that case states that a difference in pay alone cannot constitute such an aggravated situation that a reasonable employee would be forced to resign. *Id.* at 65–66. *See also Calcote v. Texas Educational Foundation*, 578 F.2d 95 (5th Cir. 1978) ("unequal pay alone does not constitute circumstances sufficiently aggravating to be called constructive discharge"). Under the circumstances here, we find no aggravating factors and we conclude that the failure to equalize pay did not ipso facto constitute constructive discharge. Pittman's employment conditions were cordial, he was urged to remain, and there was no affront to him aside from inequality of pay.

The judgment of the district court is, therefore, reversed and remanded. On remand the district court shall proceed to the issues of damages, attorneys' fees, and costs.

REVERSED AND REMANDED.