Regina Thomas WALTON, Plaintiff,

v.

COWIN EQUIPMENT COMPANY,
INC., Defendant.

No. 89–AR–0263–S.

United States District Court,
N.D. Alabama, S.D.

Oct. 11, 1991.

James Alan Mendelsohn, Gordon Silberman Wiggins & Childs, Birmingham, Ala., for plaintiff.

James P. Alexander, John W. Hargrove, Bradley Arant Rose & White, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

ACKER, District Judge.

On April 11, 1991, this court granted the motion of Regina Thomas Walton, plaintiff in the above-entitled cause, for a stay pending action by the Supreme Court of the United States on her petition for writ of certiorari directed to the Court of Appeals for the Eleventh Circuit. On October 7, 1991, the Supreme Court denied Walton's petition, automatically lifting the stay. *Walton v. Cowin Equip. Co.,* —— U.S. ——, 112 S.Ct. 86, 116 L.Ed.2d 58 (1991).

The Eleventh Circuit's opinion and mandate, now triggered, requires this court to "treat this case as a proceeding in equity, consider whether to grant the relief appellant [sic] seeks, and enter findings of fact and conclusions of law as required by Fed. R.Civ.P. 52(a)". *Walton v. Cowin Equip. Co.,* No. 90–7264, slip op. at 1 (11th Cir. March 1, 1991) [930 F.2d 924 (table) ]. The

Eleventh Circuit having already granted *appellant*, Cowin, the only relief it sought in that court, this court deduces that the Eleventh Circuit meant to order this court to grant *appellee*, the plaintiff, the equitable relief, if any, to which this court finds her entitled. In reaching its decision, the Eleventh Circuit held that a binding jury trial is forbidden in a Title VII case, which the Eleventh Circuit finds always to be "equitable". When the Supreme Court denied certiorari, the Eleventh Circuit's conclusion on this question not only was confirmed as the law of the Eleventh Circuit but became the law of this case. It did not necessarily become the law of the land, leaving open the question of whether or not the author of *Judge Acker's Last Stand: The Northern District of Alabama's Lonesome Battle for the Right to Trial by Jury under Title VII*, 39 J.Urb. & Contemp.L. 135 (1991), is correct.

Before trial, Walton's claim under 42 U.S.C. § 1981 was dismissed on Cowin's motion for partial summary judgment because of *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), with a finding pursuant to Rule 54(b), F.R.Civ.P. Walton's remaining claims were brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Plaintiff's primary claim is that she was discriminated against by her employer Cowin on account of her race, specifically that she suffered disparate treatment in pay as compared with white employees and that she had been retaliated against by Cowin for having filed her EEOC charge. *See Walton v. Cowin Equip. Co.*, 733 F.Supp. 327 (N.D.Ala. 1990), *rev'd* 930 F.2d 924 (11th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 86, 116 L.Ed.2d 58. She sought monetary compensation (which is sometimes referred to as "backpay") to make up for this pay differential. Lastly, she sought broad injunctive relief for herself and other black employees.

The court keeps in mind that Walton filed a cross-appeal from this court's final judgment as to "all appealable issues decided adversely to plaintiff". Walton's said cross-appeal was dismissed as it related to her disagreement with this court's granting of partial summary judgment against her on her claim brought under 42 U.S.C. § 1981. The reason for this dismissal was that her appeal on this issue was not timely in view of Rule 54(b). In all other respects, the Eleventh Circuit was totally silent on Walton's cross-appeal. This absence of any expression in response to Walton's cross-appeal necessarily means that all of this court's rulings against Walton were affirmed and that the issues decided against Walton need not be addressed again.

Because the Eleventh Circuit did not order a new trial, this court has read the trial transcript prepared for the appeal and, by doing so, has refreshed its recollection of the testimony and documentary evidence in order to be in a position to make the necessary findings of fact for deciding an equity case.

### Findings of Fact

Walton is a black employee of Cowin, which first employed her in 1977. Since that time she has been an exemplary and loyal employee.

More than 180 days before Walton filed her charge with EEOC in order to meet the administrative prerequisites for filing this action, Cowin selected Jean Collins, who is white, for the position of "assistant sales coordinator" rather than Walton. Within the said 180–day period, and thereafter, Walton performed duties ostensibly outside of her job description as "billing clerk", and within the duties contained in Collins's job description as "assistant sales coordinator". The duties and responsibilities were not exactly the same but were substantially similar. During the period between the date 180 days prior to the filing of Walton's EEOC charge and the date of trial, Collins was paid wages by Cowin of $14,622.40 more than was Walton.

At some time after Walton filed her EEOC charge, she was transferred from Cowin's billing department to its parts department but with no cut in pay. This transfer was occasioned by a personality conflict between Walton and Libby Brekle,

a fellow employee in the billing department. Although this personality conflict may not have been of Walton's making, it did exist, and it interfered with the smooth functioning of the billing department. Walton testified that she is now happy with her new position in the parts department. In fact, since the transfer, she has received an increase in pay.

### Conclusions of Law

This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1343(a)(4).

*The Title VII Equal Pay Claim.*

It can easily be seen that Walton is using Title VII exactly as the Equal Pay Act would be used in a sex discrimination case, except that her claim of unequal pay is based on an allegation of *racially* motivated disparate pay rather than a motivation of *gender* discrimination. Because Walton's theory is disparate treatment, she had the burden of proving a specific discriminatory intent. The court obtains guidance from *Pittman v. Hattiesburg Mun. Separate School Dist.*, 644 F.2d 1071 (5th Cir. 1981), decided before the split between the circuits, in which the "old" Fifth Circuit set out the requirement for a plaintiff's *prima facie* case of wage discrimination as follows:

> To establish a *prima facie* case of racial discrimination with respect to compensation, the plaintiff must show that [s]he was paid less than a member of a different race was paid for work requiring substantially the same responsibility. [citations omitted]. The *usual* unequal pay case involves two employees, one black and one white, employed at the same time and doing substantially the same work.

*Id.* at 1074 (emphasis supplied).

Cowin's main contention is that Walton has failed to offer solid proof to support her charge that "white persons similarly situated to plaintiff were paid at rates commensurate to their duties while plaintiff was not" (the statement of Walton's position in the pre-trial order). Cowin's said contention was urged upon the court more than once during trial and was elaborated upon in Cowin's post-trial brief. It boils down to the argument that Walton has failed to compare herself with a particular white employee, or to particular white employees, with substantially the same duties and responsibilities. Because of Cowin's statute of limitations defense, the court refused to allow Walton to try to prove a claim that she was the victim of discrimination and was entitled to backpay as a direct consequence of Cowin's selection of Collins, who is white, instead of Walton, who is black, for the position of "assistant sales coordinator". The reason for this ruling was and still is that Cowin's decision to give the job to Collins was made known to Walton more than 180 days before Walton filed her EEOC charge, and thus is barred. Nevertheless, the court did allow Walton to place into evidence materials obtained by discovery and arguably demonstrating that, for a period of time not precluded by the 180–day statute of limitations, Collins's salary exceeded Walton's wages by the sum of $14,622.40.

It would indeed be a rare case in which a black employee (or a female employee in an Equal Pay Act case) is able to present a precise and exact comparison, or an equation, between her job responsibilities and those of a higher paid non-protected employee. The workplace is very rarely that simple an environment. It is susceptible to discriminatory conduct of a very subtle nature. Walton held the job title "billing clerk" before she was transferred to the parts department. Job titles can be very misleading tools for making job comparisons. Walton, who came to work for Cowin in 1977, was admittedly Cowin's highest paid "billing clerk". However, both she and her two fellow billing clerks, both of them white, testified that Walton was routinely called upon to perform other duties, many of which could not be fairly described as "billing clerk" duties and many of which were contained within the actual job description of Collins, namely, "assistant sales coordinator". Obviously, if Walton had chosen to compare herself, as Cowin would compare her, only with other "billing clerks", she would have no case. She nev-

er held the title of "assistant sales coordinator", but she did offer substantial proof that she performed actual job duties and responsibilities which overlapped or were commensurate with those undertaken by Collins. The evidence was quite strong that Walton's duties were broader than the duties of her two fellow "billing clerks". It was also virtually undisputed that at least some of Walton's duties duplicated those of Collins. The percentage or the importance of these overlaps was, of course, a matter of sharp dispute. This dispute over comparability was not of the kind to be resolved under the discredited "comparable worth" theory but rather was of a kind to be resolved by a rational effort by this factfinder to compare the actual duties performed and responsibilities assigned to the employees being compared. Admittedly, this can be a difficult task for the factfinder. Cowin does not want this court to recognize some kind of a discounting principle in cases like this, cases in which the two jobs being compared are not identical but may nevertheless be compared by the use of reason. Some guidance is furnished by the pattern jury charges under the Equal Pay Act published by the Eleventh Circuit District Judges Association under the editorship of Hon. W. Terrell Hodges of the Middle District of Florida. Those instructions say, *inter alia:*

In order to prevail on her claim the Plaintiff must prove each of the following things by a preponderance of the evidence:

*First:* That the Defendant is an "employer" within the meaning of the Equal Pay Act;

*Second:* That the Plaintiff and a member or members of the opposite sex have been employed by the Defendant on jobs the performance of which require equal skill, effort and responsibility;

*Third:* That the two jobs are performed under similar working conditions; and

*Fourth:* That the Plaintiff was paid a lower wage than a member of the opposite sex doing equal work.

With respect to the first of these items of proof—that the Defendant is an employer subject to the provisions of the Equal Pay Act—the parties have stipulated or agreed to that fact and you should consider it as proven.

With respect to the second thing the Plaintiff must prove—that she and members of the opposite sex have been employed on jobs requiring substantially equal skill, effort and responsibility—you will note that it is not necessary that the two jobs be identical; the law requires proof that the performance of the two jobs demands "substantially equal" skill, effort and responsibility. Insignificant and insubstantial or trivial differences do not matter and may be disregarded.

Also, in deciding whether two jobs are substantially equal, you should consider the actual job performance requirements; job classifications, descriptions or titles are not controlling.

Now, in considering this issue you must evaluate the two jobs in three different ways—"skill," "effort," and "responsibility."

In deciding whether the jobs require substantially equal "skill," you should consider such factors as the level of education, experience, training and ability necessary to meet the performance requirements of the respective jobs.

In deciding whether the jobs require substantially equal "effort," you should consider the amount of physical and mental exertion needed for the performance of the respective jobs. Duties that result in mental or physical fatigue and emotional stress, or factors that alleviate fatigue and stress, should be weighed together in assessing the relative effort involved. It may be that jobs require equal effort in their performance even though the effort is exerted in different ways on the two jobs; but jobs do not entail equal effort, even though they involve most of the same routine duties, if one job requires other additional tasks that consume a significant amount of extra time and effort.

In deciding whether the jobs involve substantially equal "responsibility," you

should consider the degree of accountability required in the performance of the work. You should take into account such things as the level of authority delegated to the respective employees to direct or supervise the work of others or represent the employer in dealing with customers or suppliers, and/or the consequences of mis-performance of the work in terms of possible damage to valuable equipment or possible loss of business or productivity.

With respect to the third thing the Plaintiff must prove—that the jobs are performed under similar working conditions—you will note that the test here is whether the working conditions are "similar;" they need not be substantially equal. In deciding whether relative working conditions are similar, you should consider the surroundings or the environment in which the work is performed, including the elements to which employees may be exposed. You should also consider any hazards of the work including risks of injury, their frequency and severity.

Finally, of course, the Plaintiff must prove that she was paid a lower wage than a member of the opposite sex doing equal work.

If you find in favor of the Plaintiff concerning each of these issues, and against the Defendant on its defenses, you will then consider the matter of Plaintiff's damages.

*Pattern Jury Instructions, Civil Cases,* U.S. Eleventh Circuit District Judges Association, at 68, *et seq.*

These instructions accurately reflect the law applicable to Walton's case except, of course, that references to racial discrimination must be substituted for gender discrimination where those references appear.

Walton introduced her evidence almost as if she had this instruction in mind. The evidence was undisputed that Walton was a loyal, hardworking employee. The evidence was, of course, in conflict about what constituted the "essence" or essential ingredients of the job which Collins held. Walton's witnesses may have been less knowledgeable than Cowin's witnesses on this important subject, but this court finds from a combination of the direct and circumstantial evidence that Walton performed enough of the same duties, and undertook enough of the same responsibilities as Collins, to be entitled under Title VII to the same compensation which Collins received, that is, if the differential in compensation can fairly be attributed to Walton's race.

The real question, then, becomes whether or not there was sufficient evidence for this court to deduce a racial motive for this pay differential. Walton did not even attempt to employ the "direct evidence" method of proof found in *Bell v. Birmingham Linen,* 715 F.2d 1552 (11th Cir.1983), but did show that her race was a sometime topic of conversation in the office, apparently always jovial. In fact, Cowin itself proved without contradiction that Walton had initially been employed as a part of Cowin's voluntary affirmative action program. Cowin, then, admitted that it was not entirely "color blind" in its employment decision-making, or, in other words, that race could, from time to time, be a motivating factor in its decision-making. Using the analysis in *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), Walton proved that she was black, and she offered substantial evidence that she was paid less than a white employee with whom she can be fairly compared. She thus made out her *prima facie* case. For valid strategy reasons, Cowin did not attempt to articulate a legitimate non-discriminatory reason for this disparate treatment. Instead, it was consistent and simply denied that there had been any disparate treatment except that created by paying different wages for different jobs. Without any obligation upon Walton to prove that an unarticulated reason was pretextual, whether the *prima facie* case became dispositive depends upon the resolution of the only disputed fact question, namely, whether there was a reasonable job equivalence. The court finds substantial equivalence.

Even without depending upon the *prima facie* case as dispositive, there was a substantial evidentiary basis for this court to determine, as it does, that Walton's race was a motivating factor which contributed to the difference of $14,622.40 in the pay which Walton received and the pay which Collins, a white employee, received for substantially similar work. Unthinking discriminatory treatment can meet the threshold of intentional discrimination, because an employer has some obligation under Title VII to think.

Cowin's affirmative action program may have contributed to the creation of a climate in Cowin's workforce in which individual employees' expectations could not always be met without fostering a perception of racially infected decision-making. Even if this is true, it cannot influence the outcome in this case, which has no "affirmative action" aspect.

*The Mt. Healthy Defense.*

Cowin did interpose as an alternative or a theoretical defense an affirmative assertion that it would have paid Walton what it underpaid her, even if part of its motivation can be found to be racial. On this issue, Cowin had the burden of proof. Cowin offered no credible evidence in supporting such a defense, which, as it turned out, proved to be purely theoretical and not real.

*The Retaliation Claim.*

Because Walton's appeal from this court's previous rejection of her retaliation claim was unsuccessful, the issue no longer needs to be addressed, but because the Eleventh Circuit's opinion has an enigmatic quality, this court will repeat its findings on the subject.

▮ Walton's claim of retaliation cannot depend for its viability upon the simple *McDonnell* analysis. The mere facts that Walton is black, that she filed an EEOC charge, and that after a considerable lapse of time she was transferred from the billing department to the parts department, do not, in combination, make out a *prima facie* case. In retaliation cases the "causal link" cannot be presumed. It must be proven by a preponderance of the evidence. *DeAnda v. St. Joseph Hospital*, 671 F.2d 850 (5th Cir.1982); *Simmons v. Camden County Board of Education*, 757 F.2d 1187, 1189 (11th Cir.1985). *If* Walton had shown that she was fired after she filed her EEOC charge, *or if* she had shown that her pay was reduced after the EEOC charge, *or if* she had shown that she had been chastised by Cowin for filing the charge, *or if* she had shown that the transfer followed right on the heels of the filing of her EEOC charge, she might have created a retaliation issue. Under Walton's actual evidence there was no need for Cowin to articulate a legitimate, non-discriminatory reason for her transfer to another department. Cowin did so anyway. Walton herself conceded that she had a personality conflict with Libby Brekle, her immediate supervisor in the billing department. From the witness stand, Mr. Cowin, the president of Cowin, articulated a very legitimate, if not a crucial, business reason for transferring Walton, namely, the need to separate two employees whose out-of-joint noses were serious and disruptive. The earlier friendship between Walton and Brekle had turned to enmity and distrust, through no fault of Cowin. After Mr. Cowin denied that there was the slightest causal connection between his decision to transfer Walton, with no loss in pay, and the then well-known pendency of the EEOC charge, Walton not only did not cross-examine Mr. Cowin on this subject, but offered no rebuttal testimony to suggest in the slightest that Mr. Cowin's articulated business reason for Walton's transfer was pretextual. In fact, Walton has had a pay increase in her new job, and says she is now happy except for the disparate pay. She certainly has not been punished in any way since initiating the EEOC complaint. It is possible that the reason she kept her job is *because* of her EEOC charge. As a practical matter she gave up the retaliation issue.

*Injunctive Relief.*

▮ Again, Walton's earlier appeal to the Eleventh Circuit from the denial of her request for injunctive relief was unsuccess-

ful, and that denial has become the law of the case. Nevertheless, the court will again repeat itself. Walton sought an injunction against potential future racially discriminatory acts against her and other Cowin employees. She offered no credible evidence of any broad-based or pervasive racial discrimination by Cowin in the workplace, certainly none which would justify injunctive relief. In this individual disparate treatment case, in which Cowin can be assumed to have learned the hard lesson taught by the entry of the monetary judgment which will accompany this opinion, and the payment of plaintiff's attorney's fees, there is no reason for fashioning broad injunctive relief, a remedy which would require future involvement and monitoring by this court. In the opinion of this court, under these circumstances the provisions of Title VII itself suffice as the appropriate limitation on Cowin's future employment practices as they may impact on its black employees, including Walton.

\* \* \*

An appropriate, separate order will be entered.