Jacqueline S. VERHELST, Plaintiff,

v.

MICHAEL D'S RESTAURANT SAN ANTONIO, INC. d/b/a Wild Zebra Gentlemen's Club, Defendant.

No. SA99–CA–1233 WWJ.

United States District Court,
W.D. Texas,
San Antonio Division.

Aug. 2, 2001.

Christopher J. Gale, Mark Anthony Sanchez, Gale, Wilson & Sanchez, PLLC, San Antonio, TX, for Plaintiff.

Joe Frazier Brown, Jr., Michael Lamoine Holland, Thornton, Summers, Biechlin, et al., San Antonio, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

JUSTICE, Senior District Judge.

The court now considers the Defendant's Motion for Summary Judgment [Document No. 44]. Defendant Michael D's Restaurant, doing business as Wild Zebra Gentlemen's Club, moves for summary judgment on four of the five claims against it in the above-entitled and numbered civil action. For the reasons outlined below, the defendant's motion will be denied.

### BACKGROUND

Plaintiff Jacqueline Verhelst ("plaintiff") has asserted claims of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964; intentional infliction of emotional distress; assault and battery; and negligent hiring, training and supervision. She has generally alleged that during the course of her employment as a bartender with the defendant, she was subjected to harassment due to her sex in the form of sexual remarks, overtures and physical assaults by her immediate supervisor, Richard Bieger ("Bieger"). The most serious of these actions allegedly occurred on December 3, 1997, when the plaintiff claims that Bieger sexually assaulted her in his office. The plaintiff charges the defendant with affirmatively ratifying the acts by not responding to the plaintiff's complaints and refusing to impose remedial measures despite knowledge of the events. The plaintiff further claims that while attempting to allow for management to correct the situation, the circumstances of her employment become so intolerable that she was forced to resign on March 13, 1998. The defendant denies all

allegations except that the plaintiff and Bieger were both its employees. The defendant has moved for summary judgment on all claims except the plaintiff's harassment claim.

## ANALYSIS

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material facts exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only disputes about material facts will preclude the granting of summary judgment. *Id.*

In a motion for summary judgment, the burden is on the movant. *Latimer v. Smithkline & French Laboratories*, 919 F.2d 301, 303 (5th Cir.1990). If the non-movant bears the burden of proof at trial, however, the party seeking summary judgment may satisfy its burden by showing that there is an absence of evidence to support the nonmovant's case. *Id.; Little*, 37 F.3d at 1075. Once the movant makes this showing, the burden shifts to the non-movant to demonstrate that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,' ... by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538, (1986); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 871–73, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir.1994)). Rather, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). In determining whether a genuine issue for trial exists, the court must view all of the evidence in the light most favorable to the nonmovant. *Richter v. Merchants Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir.1996) (per curiam); *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir.1990).

### B. Retaliation

■ Title VII protects employees against retaliation by their employers for asserting their rights under the Civil Rights Act.[1] A prima facie case is made where the employee has demonstrated "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir.1996).

■ The defendant moves for summary judgment solely in relation to the second element, submitting that the plaintiff can-

---

1. Specifically, Section 2000e–3(a) of Title VII provides that

 It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... to discriminate against any individual ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

 42 U.S.C. § 2000e–3(a) (1994).

964

not identify any adverse employment action taken against her. The plaintiff maintains that she was constructively discharged, which, if proven, would constitute an adverse employment decision. *See Landgraf v. USI Film Prods.*, 968 F.2d 427, 431 (5th Cir.1992); *see also Hernandez–Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir.1998) ("A 'discharge' under § 2000e–3(a) may be constructive as well as a direct firing."). Whether the plaintiff resigned voluntarily or not is a subject of dispute between the parties.

■■■■ In order to establish constructive discharge, a plaintiff must show that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61, 65 (5th Cir.1980). Contrary to the contention of defendant's counsel, it is the effect of the working conditions on the employee, and not the subjective intent of the employer, that governs this determination. *Jett v. Dallas Independent School District*, 798 F.2d 748, 755 (5th Cir.1986), *aff'd in part, rev'd in part*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Constructive discharge does require aggravating factors, however, that demonstrate "a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." *Landgraf*, 968 F.2d at 430 (citing *Pittman v. Hattiesburg Municipal Separate School District*, 644 F.2d 1071, 1077 (5th Cir. 1981)).

From the picture painted by the plaintiff, it is entirely apparent that a reasonable person would have felt compelled to resign. Indeed, if the allegations are true, it is a matter of wonderment that she remained at her employment as long as she did. The plaintiff's affidavit contains evidence indicating that in the period between the alleged assault and her resignation, she was subjected to continual physical and verbal harassment (*e.g.*, Bieger would comment on her lips and buttocks, would rub his hand and other objects between her thighs, and would repeatedly request backrubs). *See* Affidavit of Jacqueline Verhelst. She also maintains that Bieger threatened her life if she reported the alleged assault. *See id.* In a report prepared by her treating psychotherapist, Edward Alderette, it is noted that the plaintiff experienced panic attacks and severe depression which manifested in physical infirmities (nausea, insomnia, headaches, etc.) in the months following the alleged assault. *See* May 31, 1999 Medical Report. Less than a week after her resignation, she attempted suicide. *See id.*

Evidence suggesting a complete refusal by the defendant company to address the allegations of sexual harassment by the plaintiff clearly creates an issue as to the existence of aggravating circumstances. For example, the plaintiff maintains that she was unable to have her work schedule altered so as to avoid working with Bieger. *See* Affidavit of Jacqueline Verhelst. Manager Mike Schuler, who received the plaintiff's schedule change request, stated that after he had rearranged the schedule, the plaintiff's shift assignments were returned to their original settings, most likely by General Manager Nick Mabilia. *See* Affidavit of Mike Schuler. This resulted in the plaintiff continuing to work on Wednesday nights, when she was the only bartender on duty and Bieger was the sole manager. *See* Affidavit of Jacqueline Verhelst. This evidence clearly demonstrates a genuine issue as to the nature of the plaintiff's resignation.

■■■■ The passage of three months between the alleged December 3, 1997 assault and the date of plaintiff's resignation,

where evidence exists to show that the plaintiff requested and allowed time for corrective action, does not defeat her claim of constructive discharge, and may in fact support it. *See Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 310 (5th Cir.1987) ("Part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast."). Accordingly, the defendant's motion for summary judgment on plaintiff's retaliation claim will be denied.

### C. *Intentional Infliction of Emotional Distress*

The defendant moves for summary judgment as to plaintiff's intentional infliction of emotional distress claim on grounds of insufficient evidence. In the alternative, it contends that, as a matter of law, it is not liable for acts of its agents not committed within the scope of employment.

In *Twyman v. Twyman*, 855 S.W.2d 619 (Tex.1993), the Texas Supreme Court adopted the Restatement's formulation of intentional infliction of emotional distress. To succeed, a plaintiff must show the following:

(1) that the defendant acted recklessly or intentionally;

(2) that the defendant's conduct was extreme and outrageous;

(3) that the defendant's conduct proximately caused the plaintiff emotional distress; and

(4) that the emotional distress suffered by the plaintiff was severe.

*Id.* at 621; Restatement (Second) of Torts § 46. A defendant's conduct must be "...so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized community." *Morgan v. Antho-*

*ny*, 27 S.W.3d 928 (Tex.2000). Generally, insensitive or even rude behavior does not constitute extreme and outrageous conduct. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994). In determining whether certain conduct is extreme and outrageous, courts consider the context and the relationship between the parties. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex.1999); *see Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 569, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987) ("[S]ome States consider the context and the relationship between the parties significant, placing special emphasis on the workplace."); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir.1991) ("The facts of a given claim of outrageous conduct must be analyzed in context....").

The fact that Bieger's alleged actions occurred in a "gentlemen's club" does not insulate the defendant from liability. Indeed, the language and existence of defendant's policy on sexual harassment indicates that lines of proper and improper behavior can be, should be, and were drawn. *See* Deposition of Michael Wilcoxson, p. 183. Additionally, courts applying Texas law have recognized that certain sexually harassing behavior may constitute extreme and outrageous treatment. *See, e.g., Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 613–14 (5th Cir. 1999); *Stokes v. Puckett*, 972 S.W.2d 921, 924 (Tex.App.—Beaumont 1998, pet. denied).

As related in the plaintiff's affidavit, on December 3, 1997, Richard Bieger made crude and explicit comments about his desire to have sexual intercourse with the plaintiff. These comments were reportedly soon followed by an attempt to realize his desires. According to the plaintiff, Bieger grabbed her by the back of her head, forced her to kiss him on the mouth and to touch his exposed genitalia. *See*

Affidavit of Jacqueline Verhelst. The plaintiff asserts that she was able to stop the assault only by striking Bieger with a stapler. *Id.* This incident was followed by over three months of continual sexual harassment, as detailed above, and threats to her safety by Bieger if she reported the events. *Id.* The evidence submitted by the plaintiff in response to the defendant's motion is sufficient to demonstrate a genuine fact issue as to the outrageousness of Bieger's behavior.

The defendant's alternative ground for summary judgment similarly fails. Defendant correctly argues that it cannot be held liable for the intentional tort of its agent where the agent was acting outside the scope of employment. *See Mackey v. U.P. Enterprises, Inc.,* 935 S.W.2d 446, 453 (Tex.App.—Tyler 1996); *Dieter v. Baker Service Tools,* 739 S.W.2d 405 (Tex.App.—Corpus Christi 1987, writ denied). Plaintiff claims that Bieger's actions fall within the scope of his employment because he was working in a sexually-oriented establishment and because his behavior was in line with an unstated policy of breaking all the rules. This position fails for the same reason that the defendant's argument on constructive discharge does. Just as the sexual nature of the business does not mean that putting up with sexual overtures or giving in to sexual advances are part of the job, it cannot imply that fondling employees is a managerial task. The plaintiff has not provided any evidence that the assaultive and harassing behavior of which she complains was in any way an authorized part of Bieger's job responsibilities or that it was done in the defendant-employer's interest. In fact, plaintiff's affidavit indicates that the assault was for Bieger's own personal pleasure. *See* Affidavit of Jacqueline Verhelst. Accordingly, his alleged actions fall outside the scope of employment and the

defendant may not be held vicariously liable. *See Dieter,* 739 S.W.2d at 407.

Under Texas law, however, an employer may be liable for the intentional tort of its employee under a theory of ratification. *See Skidmore,* 188 F.3d at 614. Ratification means "the adoption, confirmation or failure to repudiate prior unlawful acts which were not legally binding at a time when the defendant had the right and knowledge of facts necessary to repudiate such conduct; but which, by ratification or by the failure to repudiate, become the acts of the defendant." *Prunty v. Arkansas Freightways, Inc.,* 16 F.3d 649, 655 (5th Cir.1994) (citing *Hinote v. Oil, Chemical and Atomic Workers Union,* 777 S.W.2d 134, 141 (Tex.App.—San Antonio 1989, writ denied)). Neither the mere retention of an employee or denial of liability establish ratification. *Skidmore,* 188 F.3d at 614–15. "In the case of intentional infliction of emotional distress, the employer ... must know enough to realize that the employee's conduct was extreme and outrageous." *Id.* at 615.

The evidence submitted by the plaintiff suggests that soon after the alleged assault by Bieger, Manager Schuler and General Manager Mabilia were informed of the events. *See* Affidavit of Jacqueline Verhelst; Affidavit of Michael Schuler. It is also suggested that Mabilia actually took steps to ensure that the plaintiff would remain working on the same shift as Bieger. *Id.* Additionally, in response to reports that the alleged harassment was continuing, Mabilia allegedly stated that "he did not want to hear anything else about it," and that the subject was not to be raised in the future. *See* Affidavit of Mike Schuler. This evidence is sufficient to raise a fact issue as to whether the defendant can be charged with knowledge that Bieger's behavior was tortious, and whether it ratified his acts and thus may be

liable. Summary judgment on plaintiff's claim of intentional infliction of emotional distress will be denied.

### D. Assault and Battery

 For the reasons outlined in the previous section, the defendant's motion for summary judgment will also be denied as to plaintiff's assault and battery claim. The jury will consider whether the assault occurred, and whether the defendant incurred liability as a result of its ratification of the act. It is found, however, that the alleged assault was not within the scope of Bieger's employment as a matter of law. *See Texas & P. Ry. Co. v. Hagenloh*, 151 Tex. 191, 247 S.W.2d 236 (1952) (holding that assault and battery not ordinarily within scope of employment); *Mackey*, 935 S.W.2d at 453 (recognizing assault as an expression of personal animosity).

### E. Negligent Hiring, Training and Supervision.

Defendant moves for summary judgment on plaintiff's claim of negligent hiring, training and supervision, claiming that no evidence exists to support the charge. Alternatively, it argues that the plaintiff did not suffer physical injury as required to support the negligence claim. Finally, it contends that it does not owe plaintiff any special duty that would increase liability on this issue, and that the defendant exercised ordinary care in hiring, training and supervising its employee, Richard Bieger.

 Texas law allows recovery for negligent hiring, training and supervision where an employer knew or should have known through the exercise of reasonable care that an employee was incompetent or unfit and that his hiring or retention would thereby create an unreasonable risk of harm to others. *Kesler v. King*, 29 F.Supp.2d 356, 376–77 (S.D.Tex.1998) (cit-

ing *Estate of Arrington v. Fields*, 578 S.W.2d 173, 178 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.)). As between employer and employee, the duty in general implies an inquiry into the qualifications of candidates for employment, the termination of employees who are not qualified or are unfit, and the adequate supervision and training of employees. *See Carney v. Roberts Investment Co.*, 837 S.W.2d 206, 211 (Tex.App.—Tyler 1992, no writ).

 The plaintiff has asked the court to impose a higher standard of care on the defendant due to the nature of the defendant's business. On matters of state law, the federal courts are bound to follow the law of the state as has been interpreted by that state's courts, or, if an issue of first impression, apply the law in accordance with what the state supreme court might do. *See, e.g., MBank Ft. Worth, N.A. v. Trans Meridian*, 820 F.2d 716, 720 (5th Cir.1987). Texas courts have recognized that the scope of this duty may increase toward certain groups because of their vulnerabilities or due to the inherent dangerousness of the service being provided. *See, e.g., Porter v. Nemir*, 900 S.W.2d 376, 386 (Tex.App.—Austin 1995, no writ) (higher standard toward patients of psychological counselor); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 868 S.W.2d 942, 951 (Tex.App.—Amarillo 1994, writ granted), aff'd, 907 S.W.2d 472 (Tex.1995) (higher duty owed to children); *Deerings W. Nursing Ctr. v. Scott*, 787 S.W.2d 494, 498–99 (Tex.App.—El Paso 1990, writ denied) (Fuller, J., concurring) (high degree of care owed to elderly); *see generally* 33 Tex Jur 3d, *Employer and Employee* § 381 (1997) (highest degree of care owed by employers using dangerous instrumentalities in course of business). No Texas court has announced a higher standard for sexually-oriented businesses. Neither has any state court specifically addressed

whether such an employer owes its employees a duty above that of ordinary care. In this absence of authority, the plaintiff has not persuaded the court that a higher standard of care is either appropriate or necessary, or would be imposed by the Texas Supreme Court.

■ The plaintiff has, however, raised an issue as to whether the defendant breached its duty in supervising its employee, Richard Bieger. As recounted above, evidence suggests that no corrective action was taken after the alleged December 3, 1997 assault. Further, the plaintiff has suggested that nothing was done for the remainder of her employment despite Bieger's on-going harassment. It is alleged that the general manager, while knowing of the continuing harassment by Bieger, chose to ignore the situation. Finally, the plaintiff maintains that Bieger was the only supervisor working during her shifts, meaning that he was never observed by his superiors. These contentions raise fact issues sufficient to withstand summary judgment.

■ Finally, the defendant argues that the plaintiff's claim must fail as a matter of law because she has not alleged any physical injury. While neither the defendant nor the plaintiff presented any cases to the court for guidance on this issue, it appears that the defendant's position is based on an older understanding of the claim of negligent hiring and supervision. *See Sibley v. Kaiser Found. Health Plan of Tex.,* 998 S.W.2d 399, 403–04 (Tex.App.—Texarkana 1999, no pet.) (holding that the doctrine extends only to prevent the employee or independent contractor from causing physical harm to a third party); *Verinakis v. Medical Profiles, Inc.,* 987 S.W.2d 90, 97–98 (Tex.App.—Houston [14th Dist.] 1998, pet. denied). More recently, Texas courts and federal courts applying Texas law have followed the theory announced by

the San Antonio Court of Appeals in *Gonzales v. Willis,* 995 S.W.2d 729 (Tex.App.—San Antonio 1999, no pet.), which recognized that a cause of action for negligent supervision and training requires that the employee in question commit an actionable tort, causing a "legally compensable injury"—not necessarily a physical injury. *Id.* at 739; *accord Nichols v. Apartment Temporaries Inc.,* 2001 WL 182701 *5 (N.D.Tex.2001); *Griego v. United States,* 2000 WL 33348763 *6 (W.D.Tex.2000); *Host Marriott Corp. v. Meadows,* 2001 WL 727341, *2 (Tex.App.—Dallas 2001) (unpublished disposition); *Centennial Ins. Co. v. Bailey,* 2000 WL 1515158 *6 (Tex. App.—Dallas 2000) (unpublished disposition); *Garcia v. Allen,* 28 S.W.3d 587, 593 (Tex.App.—Corpus Christi 2000, pet. denied). Since the plaintiff has shown a genuine issue of material fact as to whether Bieger committed intentional infliction of emotional distress, assault and battery, defendant's motion for summary judgment as to negligent hiring, training and supervision will be denied.

CONCLUSION

Upon the findings detailed above, it is adjudged that Defendant's Motion for Summary Judgment shall be and is hereby

**DENIED.**

It is so **ORDERED.**